NAUMADEAN DAVIS BLALOCK v. C. POWLEDGE, as Chief of Police of the City of Tallahassee.

179 So. 772.
Division B.
Opinion Filed February 19, 1938.
Rehearing Denied March 29, 1938.

*J. Velma Keen* and *A. Frank O'Kelley, Jr.,* for Petitioner;

*James Messer, Jr.,* for Respondent.

CHAPMAN, J.—On September 15, 1937, Naumadean Davis Blalock was arrested by the Chief of Police of the City of Tallahassee on a warrant issued by the Municipal Court of the City of Tallahassee, Florida, the pertinent portion of which is, viz.:

"* * * one Naumadean Davis Blalock did then and there unlawfully manage an agency which said agency was located in the said City of Tallahassee, Florida, the said agency being then and there engaged in soliciting business for an out-of-town enterprise, to-wit: Montgomery Ward & Company, a corporation with a store and place of business located in the City of Jacksonville, County of Duval and State of Florida; and the said agency then and there maintaining display rooms and keeping merchandise in said display rooms for display purposes only, without having first procured an occupational license to manage said agency from the City Treasurer and Collector of the City of Tallahassee and paid to the said City Treasurer and Collector

the amount of the license tax required for said license contrary to the Laws and Ordinances of said City * * *"

The warrant charges violation of Ordinances of the said City and the Charter provisions and Ordinances are, viz.:

"Sec. 84. Licenses. The City Commission is authorized to levy and impose license taxes, by ordinance, for the purposes of regulation and revenue, upon all occupations and upon any and all privileges, and to determine and fix the amounts to be paid, which amounts shall not be limited or restricted by the general revenue laws of the State; to provide for the collection of the same, and to provide penalties for failure or refusal to pay such license taxes * * *"

Pursuant to the provisions of the City Charter above cited, the City of Tallahassee enacted the following ordinances:

"Sec. 695 (383). License and Occupational Taxes Levied.—No person shall engage in or manage the business, profession, privileges or occupation hereinafter mentioned and required to be licensed within the City of Tallahassee, unless and until a city license shall have been procured from the City Treasurer and Collector of the City of Tallahassee, which license shall be then and there issued by the City Treasurer and Collector upon the payment of the amount of license tax required therefor, without any additional charge or fee whatever. The word 'person' in this ordinace shall include natural and corporate 'persons' and embrace the plural number, and the word 'persons' shall embrace the singular number.

"Sec. 699 (386). Amount of License and Occupational Taxes.—The amount of license tax levied and imposed upon every person, firm, corporation or association that shall engage in or manage any business, profession, privilege or occupation hereinafter mentioned within the City of Talla-

hassee, is hereby fixed, graded and determined at the following amounts : * * *

"(Sub-section) 12. AGENCY. * * * Soliciting for out-of-town enterprises where display rooms are maintained and merchandise kept on hand as samples for display purposes only. Provided, however, that the occupational license tax hereby imposed shall not apply to establishments regularly and continuously engaged in the sale of merchandise customarliy carried on hand as a part of the regular stock of such establishment (Passed November 24, 1936, No. 278, Sec. 1) ........................................................................$100.00"

Counsel for the parties stipulate as to the facts involved and the material portions are, viz.:

"The order office at Tallahassee carries samples for purposes of display only, no sales being made from the stock of merchandise carried on hand. During the year 1937 to the middle of August the average value of the samples carried in the Tallahassee order office has been $210.00. The order office also carries catalogues listing and describing the merchandise which may be purchased from the mail order house at Baltimore, Maryland. One or more persons are regularly employed at the order office to assist customers in selecting and ordering merchandise. Order blanks filled in by the customers with or without the assistance of the employees, will be forwarded by the order office to the warehouse at Jacksonville, Florida, or to the mail order houses at Baltimore or Chicago. The average number of persons employed in Tallahassee during the year 1937 to the middle of August was one and seven-tenths. Sixty-eight and nine-hundredths per cent. of the orders placed at Tallahasse during 1937 have been sent directly to Baltimore or Chicago. The remaining thirty-one and ninety-one hudredths per cent. were sent to Jacksonville. Because of the fact that many of the larger items are carried

in Jacksonville, the orders sent to Jacksonville were higher
in terms of dollar sales than those sent to Chicago and Bal-
timore; $18,737.00 compared to a total of $14,383.00 sent
to Baltimore and Chicago. Of the total orders fifty-nine
and nine-hundredths per cent. were ordered on the time
payment plan, the balance being orders in which cash was
forwarded with the order. The time payment orders were
handled in the same way as the cash orders except that the
approval of the Central Credit Office in Chicago was re-
quired before the order could be accepted. Cash orders
sent to Jacksonville are accepted or rejected there. Simi-
larly cash orders sent to Baltimore or Chicago are accepted
or rejected by the mail order house to which they are sent.
The Tallahassee order office has no authority to accept or
reject orders, but merely forwards them to Jacksonville,
Baltimore, or Chicago, depending upon the type of mer-
chandise ordered. When the orders are accepted, the mer-
chandise is shipped either directly to the customer or to the
order office in Tallahassee, depending upon the customer's
request. In terms of dollar sales, sixty per cent. of the
merchandise ordered is shipped direct to the customer; the
remaining forty per cent. is shipped to the order office at
Tallahassee to be called for there by the customer. In the
case of shipments made to Tallahassee, the merchandise to
be shipped from Jacksonville, Baltimore, or Chicago to the
order office on a particular day is first wrapped in individual
packages, marked with the customer's name, and then col-
lected together and shipped to the order office in a single
parcel.

"The manager of the order office at Tallahassee has been
authorized to make minor adjustments if the merchandise
is shown to be in imperfect condition at the time of its re-
ceipt. All other adjustments are referred to the mail order
houses at Chicago or Baltimore, adjustments on merchan-

dise shipped from the warehouse at Jacksonville being made at Baltimore.

"The company also operates order offices in Florida at the following locations: Fort Myers, Fort Pierce, Gainesville, Ocala, West Palm Beach, and Jacksonville, which are operated similarly to the Tallahassee order office and to which are supplied by the Jacksonville warehouse, as well as by the the Baltimore and Chicago mail order houses.

"The Jacksonville warehouse pays a city tax of $120.00 a year for a license to operate a department store, State and county taxes for licenses to sell tires and radios, and a chain store tax to the State."

Counsel for petitioner contends that the ordinance, *supra,* is null, void and without sufficiency for reasons, viz.:

"1.   The ordinance is invalid because under its terms the City undertakes to exercise extra-territorial jurisdiction in that a special tax is levied upon commerce and trade carried on between two cities (Tallahassee and Jacksonville), and this power can be exercised by the State only, since the State alone has territorial jurisdiction over both cities.

"2.   The ordinance, as applied to this case, violates the Fourteenth Amendment to the Federal Constitution and Sections 1 and 12 of the Florida Declaration of Rights in that:

"(a) It applies to an agency soliciting business for out-of-town enterprise where display rooms are maintained and merchandise kept on hand for display purposes only, but does not apply to establishments regularly and continuously engaged in the sale of merchandise customarily carried on hand as a part of the regular stock of such establishment, although the merchant with a regularly established stock may also solicit business for out-of-town enterprises from samples kept on hand in a display room for display pur-

poses only. The agency and the regularly established business may conduct their businesses in the same manner in reference to soliciting business for out-of-town enterprises, and yet the agency will be subject to the tax while the regularly established business will not be taxed.

"(b) It discriminates against agencies soliciting business for out-of-town enterprises in that such agencies are subject to the tax while agencies soliciting business under the same circumstances and in the same manner for enterprises located within the city are not subject to the tax.

"(c) It makes the place of origin of the goods sold (out-of-town enterprises) the feature that determines the applicability of the tax.

"(3) The ordinance is invalid because it imposes a license tax that is indivisible and applies to the intrastate and the interstate business of the company and therefore places an unlawful burden on interstate commerce."

Counsel for petitioner contends that the ordinance is invalid because the City of Tallahassee undertakes by the terms of the ordinance to regulate trade or business outside of the territorial limits of said City of Tallahassee and extend this authority to the City of Jacksonville, and is without power so to do, and such power and such authority is not in the City of Tallahassee, but is vested, only, in the State of Florida. The support of this position rests on the case of Duffin v. Tucker, 113 Fla. 621, 153 So. 298. This Court in that case held invalid an ordinance levying a tax on persons selling, or delivering goods, wares, or merchandise in the City of Cocoa, Florida, wholesale or retail, or either, but exempting salesmen for concerns doing business in some other State or County. The facts, according to the stipulation of counsel, show that on February 14, 1933, Farris & Company, of Jacksonville, Florida, operated

through the City of Cocoa a refrigerated truck and a salesman rode on the truck from Jacksonville to Cocoa and on the aforesaid date took an order for meat from Kempfer's, Inc., to be delivered to him at Cocoa, Florida, on February 16, 1933, by the Farris & Company's truck. It was a revenue measure. There was no branch store of Farris & Company at Cocoa when the salesman accompanying the truck driver, took the order for the merchandise to be delivered on February 16th from the truck to the customer at Cocoa. Farris & Company received no municipal benefits from said city and kept there no employees continuously to take orders and transmit the same to the head office, exhibit samples of merchandise, and assist continuously in the delivery of articles of merchandise previously purchased. We fail to see how the case at bar is affected by this authority.

Counsel for petitioner cites the case of Hamilton v. Collins, 114 Fla. 276, 154 So. 201. The ordinance involved therein provided that all persons maintaining an established place of business in the City of Quincy, for the purpose of business mentioned, should pay a license tax in the sum of $10.00, and that all persons *not* maintaining such a place of business in the City of Quincy but engaged in the same business in the City of Quincy, shall pay a license tax of $50.00. The Court held that the attempted classification of one who maintained a business in the City and paying a tax of $10.00 as against another who did not maintain a place of business in Quincy but transacted the same business therein, should pay the sum of $50.00 as a tax was an unlawful discrimination and the ordinance was void.

In the case of Farris v. Hall, 115 Fla. 433, 156 Sou. 114, this Court on rehearing said:

"On Petition for Rehearing.

"Per Curiam. * * * Petitioners in this case were not discharged for insufficiency *per se* of the ordinance of Lake

City they were accused of violating, but because the *facts of this case* as disclosed by the record, clearly show that it is within the ruling of this Court made in Duffin v. Tucker, 113 Fla. 621, 153 Sou. Rep. 298.

"In that case it was held that a municipality may not by fine and imprisonment enforce payment of a license tax as attempted to be exacted against mere salesmen, who simply take orders in a city for goods to be afterward delivered to the customers after such orders are accepted by outside dealers doing business in another place in the State of Florida, and properly licensed where, they maintain their principal places of business to do the business they carry on. Rehearing denied."

In the case of Whiddon v. Vickers, 127 Fla. 222, 172 Sou. Rep. 923, this Court said:

"It will be observed that the ordinance specifically provides that the ordinance shall not apply to persons, firms or corporations who maintain a store, bakery, warehouse, laundry, pressing club or other place of business in the City of Jasper, Florida, but shall apply to persons, firms or corporations who sell and dispose of such commodities from automobiles, trucks, wagons, drays, box cars or other vehicles without maintaining a store or other place of business in the City of Jasper.

"The judgment should be reversed upon authority of the opinion and judgment in the case of Duffin v. Tucker, 113 Fla. 621, 153 Sou. 298; Farris v. Hall, 115 Fla. 433, 156 Sou. 114, and Hamilton v. Collins, 114 Fla. 276, 154 Sou. 201."

The first assignment is without merit.

It is next contended that the ordinance is void, because:

"(1) It discriminates against agencies soliciting business for out-of-town enterprises in that such agencies are sub-

ject to the tax while agencies soliciting business under the same circumstances and in the same manner for enterprises located within the city are not subject to the tax; (2) It is discriminatory in that it imposes a tax upon an agency soliciting business for an out-of-town enterprise where display rooms are maintained and merchandise kept on hand for display purposes only, but exempts from the tax an establishment regularly and continuously engaged in the sale of merchandise customarily on hand as a part of the regular stock of such establishment, although the merchant with a regularly established stock may also solicit business for out-of-town enterprises from samples kept on hand in a display room for display purposes only."

We have given consideration to the petitioner's brief in support of this assignment. The case of Hamilton v. Collins, *supra,* was distinguished from the case at bar in the previous assignment. The Legislature of Florida, under Chapter 15519, Acts of 1931, amending Chapter 8374, Acts of 1919, granted enumerated powers to the City of Tallahassee for the purpose of regulation and revenue, the power to impose and levy license taxes on all occupations and privileges, and to fix the amount thereof. This grant of power by the Legislature is general and very broad and the ordinance classifies the business in which petitioner is now engaged. There has not been shown here a discrimination as affects the ordinance. In the case of *Ex Parte:* H. R. Smith, 100 Fla. 1, text 6, 128 So. 864, this Court said:

"The courts have frequently approved classifications resting upon the difference in fact between the business of an itinerant merchant, and the business of a merchant operated at a fixed location, both being engaged in the same general character of business. Such a classification is not based upon residence; but upon the essentially different methods employed by the two classes in carrying on the same general

character of business. Such a classification has been recognized by the courts as valid both in the exercise of the regulatory police power for the purpose of preventing cheats, frauds, and danger to public health or morals (see Baccus v. Louisiana, 232 U. S. 334, 58 L. Ed. 627; Mogul v. Gaither, 121 Atl. R. 32; Holsman v. Thomas, 147 N. E. R. 750; 39 A. L. R. 760; Biddle v. Enright, 146 N. E. R. 625, 39 A. L. R. 766) as well as in the exercise of the taxing power, since the State may levy a different tax on the same general character of business when conducted in essentially different modes. See Singer Sewing Machine Co. v. Brickell, 233 U. S. 304, 58 L. Ed. 974; Emert v. Missouri, 156 U. S. 296, 39 L. Ed. 430; Warren v. Geer, 11 Atl. Re. 415; Howe v. Gage, 100 U. S. 676, 25 L. Ed. 754. The classification sustained. *In re:* Haskell, 44 Pac. R. 725, 32 L. R. A. 527, relied upon by petitioner, rested upon the fact that Haskell was an itinerant merchant, whose business was carried on in a manner differing essentially from that of a merchant selling the same character of merchandise at a fixed location."

We have considered the California cases, the authorities from the State of New Jersey, and the State of Pennsylvania cited by counsel for petitioner and the splendid reasoning advanced, but in this instance we are compelled to follow the Constitution of Florida, the grant of powers to the City of Tallahassee by the Legislature of Florida, and the previous decisions of this Court.

The third contention for the invalidity of the ordinance appearing in the brief of counsel for petitioner is:

"Where a business is engaged partly in interstate and partly in intrastate commerce a license tax may not be imposed upon the whole business without regard to the amount of interstate and the amount of intrastate business done by the company. Nor may such a tax be imposed upon both

the interstate and intrastate business by being indiscriminately applied to the instrumentalities or agencies by which the business is conducted, which are common to both sorts of commerce, especially where it is impracticable to effect a separation of the business. Such a tax being indivisible and indiscriminate in its application, necessarily burdens interstate commerce, and is void."

The stipulation of facts filed in the case shows that the agency from the Tallahassee office during the year 1937 handled orders amounting to $18,737.00 for intrastate and the sum of $14,383.00 for interstate business. The separation of the interstate and intrastate business is purely a matter of bookkeeping. It is not contended that the ordinance in question controls interstate business but applied exclusively to intrastate business transacted here. The nature or character of the business as transacted through the Tallahassee office is not such that a separate and accurate account cannot be kept and this is fully established by the stipulation filed showing the amount of each for the period named.

The Legislature of Florida in 1893 by Chapter 4115 provided that "no person shall engage in or manage the business, profession, or occupation mentioned in this section, unless a State license shall have been procured from the tax collector of each county in Florida by paying thereto a certain sum." It was stipulated that the Southern Express Company was doing business in Florida ordinarily done by Express Companies in the United States, and was engaged in intrastate and interstate transportation for hire of goods and merchandise and refused to comply with the statute, *supra,* because it attempted to burden interstate commerce and for said reason it was not required to pay to the tax collector of any county of Florida the prescribed fee where it maintained an office and agent for the transaction

of an express business, both intrastate and interstate. The Supreme Court of Florida in the case of Osborne v. State, 33 Fla. 162, 14 Sou. Rep. 588, 15 L. R. A. 120, 39 Am. St. Rep. 99, sustained the constitutionality of the statute, *supra,* and in so doing, at text pages 199-200, said:

"* .* * In our judgment, the Florida statute now under consideration is, in so far as its terms can be construed to interstate or foreign commerce, of no effect; and besides this there is in the Act, in so far as it applies to express companies, nothing that necessarily regulates or that burdens or interferes with anything that is strictly interstate or foreign commerce, or that in view of the commerce clause of the Federal Constitution, should or can properly be construed to apply to interstate or foreign commerce. Any person or persons or body corporate wishing to engage in the express business, and confine that business to interstate or foreign commerce, can do so, and any effort to apply to or enforce against him the provisions of the statutes as to license, license tax or license fee must prove futile. The commerce clause of the Constitution of the United States protects him against any such interference. But because such person or persons or body corporate may have this right, he or they have not, as in incident to it, the right to engage in State commerce, and the statute, as a regulation of State commerce, is entirely valid. It is a legal regulation of State commerce, and there is nothing in the Federal Constitution that exempts any person or persons, natural or artificial, from its provisions."

See State, *ex rel.* Rand, v. Brodgen, 84 Fla. 520, 94 So. 653; Cason v. Quinby, 60 Fla. 35, 53 So. 741; Ferguson v. McDonald, 66 Fla. 494, 63 So. 915; Hardee v. Brown, 56 Fla. 377, 47 So. 834; Osborne v. State, 33 Fla. 162, 14 So. 588; Osborne v. State of Florida, 164 U. S. 650, 17 Sup. Ct. Rep. 214.

The statute involved in the case of Osborne v. State of Florida, *supra,* was upheld by the United States Supreme Court and reported in 164 U. S. 650, 17 Sup. Ct. Rep. 214, 41 L. Ed. 586, and the Court said:

"The Supreme Court of Florida has construed the ninth section of this Act and has held in express terms that it does not apply to or affect in any manner the business of this company which is interstate in its character; that it applies to and affects only its business which is done within the State, or is, as it is termed, 'local' in its character, and it has held that under that statute so long as the express company confines its operations to express business that consists of interstate or foreign commerce, it is wholly exempt from the legislation in question. It has added, however, that under the provisions of the statute, if the company engage in business within the State of a local nature as distinguished from an interstate or foreign kind of commerce, it becomes subject to the statute so far only as concerns its local business, notwithstanding it may at the same time engage in interstate or foreign commerce. In other words, this statute as construed by the Supreme Court of Florida does not exempt the express company from taxation upon its business which is solely within the State, even though at the same time the same company may do a business which is interstate in its character, and that as to the latter kind of business the statute does not apply to or affect it. As thus construed we have no doubt as to the correctness of the decision that the Act does not in any manner violate the Federal Constitution."

The petitioner is remanded to the custody of the Chief of Police of the City of Tallahassee, Florida, for further proceedings according to law.

WHITFIELD, P. J., and BROWN, J., concur.

512

TERRELL and BUFORD, J. J., concur in the opinion and judgment.

ELLIS, C. J., dissents.