C. R. DUFFIN v. W. A. TUCKER, Chief of Police.

153 So. 298.

Division B.

Opinion Filed November 16, 1933.

Rehearing Granted December 30, 1933.

Opinion on Rehearing Filed March 17, 1934.

*Hampton & Jordan,* for Plaintiff in Error;

*Fleming & Snow,* for Defendant in Error.

BUFORD, J.—This case is before us on writ of error to a judgment in habeas corpus proceedings remanding the petitioner to the custody of the Chief of Police of the City of Cocoa, Florida.

Duffin, the petitioner, was held under a conviction under an affidavit in the following language:

"Before me, T. G. Ronald, Mayor in and for the City of Cocoa, Florida, personally came W. A. Tucker, who being

duly sworn, says that on the 14th day of February, A. D. 1933, in the City aforesaid, one C. R. Duffin did sell and take orders for delivery by truck in the City of Cocoa, of goods, wares and merchandise, to-wit: neck-bones, beef liver, pig tails, baloney, ribs, white bacon and Florida smoke bacon, within the limits of the City of Cocoa, Florida, without having first procured a license from the City Clerk of the City of Cocoa, and without having paid the occupational license tax required by the City of Cocoa by persons selling, offering to sell, soliciting orders for, or delivering by truck, goods, wares and merchandise."

The provision of the ordinance which was alleged to have been violated is as follows:

"Each person who shall sell, offer to sell, solicit order for, or deliver by truck, wagon, van or other vehicle, or by persons, any goods, wares or merchandise, either wholesale or retail, either for himself or for any other person, firm or corporation, within the limits of the City of Cocoa shall be subject to the same tax as is laid upon the dealers in, or sellers of, such articles in the city, as prescribed in the said ordinance. This tax shall be laid upon the person selling, offering to sell, or soliciting the purchase of such merchandise, and where delivery is made by a person other than the salesman and the tax has been paid by the salesman no tax shall be required of the delivering agent; providing, however, that in the event a merchant located outside the City of Cocoa shall desire to pay the said tax instead of the salesman the said merchant shall be authorized to pay the said tax, and the payment of the same shall authorize the employment of only one salesman at the same time for said purpose, and such merchant shall be authorized to employ additional salesmen upon the payment of the same license tax for each additional salesman so employed; pro-

vided, further, that this tax shall not be required of sales, offers to sell or solicitation for the sale of goods to be shipped into the City of Cocoa in foreign or interstate commerce.

"That the tax required of the salesman in this section of this ordinance shall be the minimum tax specified for such business or occupation in the ordinance aforesaid, and in the event no tax is laid in said ordinance, or the amendments thereto upon the business in which such salesman is so engaged such salesman shall be subject to the license tax laid in sub-section 122 of said ordinance upon all persons, firms or corporations doing business in the City of Cocoa, or having agents or representatives established herein and not specifically enumerated, to-wit: $100.00."

It will be observed that the ordinance applies to only those persons who shall "sell, offer to sell, solicit order for, or deliver by truck, wagon, van or other vehicle, or by any persons, any goods, wares or merchandise, either wholesale or retail, either for himself or for any other person, firm or corporation within the limits of the City of Cocoa." A subsequent provision of the ordinance is that "This tax shall not be required of sales, offers to sell or solicitations for the sale of goods to be shipped into the City of Cocoa in foreign or interstate commerce."

The stipulation of facts upon which the case was presented was as follows:

"That the defendant, C. R. Duffin, is an employee of Farris & Company, a Florida corporation with headquarters in Jacksonville, Florida, which said concern is in the wholesale meat packing and meat produce business; that the defendant is a salesman of Farris & Company; that the manner in which this company operates through the City of Cocoa is as follows: refrigerated trucks owned and

operated by said company are sent into Cocoa from Jacksonville on one day and are accompanied by a salesman of Farriss & Company and a driver of the truck. The salesman takes orders in Cocoa for delivery of goods at a future date, and while the salesman is taking orders the driver of the truck delivers the goods for which orders were given the salesman during the last trip to Cocoa; that the goods for which the orders are taken are never filled in Cocoa on the same day that the order is given, nor are any goods ever sold in Cocoa directly from the truck itself, the order having always been given several days prior to the delivery thereof. Sales are made only to retail merchants and never to the individual consumer. By this class of business and this service, goods leave the cold-storage plant in Jacksonville, are put into a refrigerated truck, and are delivered to the refrigerator of the merchant, being out of refrigeration only a few minutes at a time, whereas, under the old system, that is, shipment by express or other common carrier, goods shipped out of Jacksonville would perhaps take a day to reach Cocoa and in the meantime would have become warm and in many instances mellow, and would be exposed to innumerable flies, dirt and other contaminating influences, that is to say, exposed to the elements. That on the 14th day of February, 1933, C. R. Duffin, the defendant, was employed by Farris & Company as a traveling salesman, and accompanied the truck of the said Farris & Company into the City of Cocoa, and on that day the said C. R. Duffin did take an order from Kempfer's, Inc., a merchant located in the City of Cocoa, for the following merchandise, to-wit: Neckbones, beef liver, pig tails, baloney, ribs, white bacon and Florida smoke bacon, to be delivered by the truck of Farris & Company to the said Kempfer's, Inc., in the City of Cocoa, and on the 16th

day of February, 1933, the truck driver of said Farris & Company did deliver the said merchandise to Kempfer's, Inc., in the City of Cocoa, pursuant to said order. That neither the said C. R. Duffin, nor the said driver of said truck, nor the said Farris & Company, had prior to the taking of the said order, or prior to the delivery of the said merchandise procured a license from the city clerk of Cocoa as required under the provisions of Ordinance No. 1096, as amended by Ordinance No. 1107, and without having paid the occupational tax required by the City of Cocoa of persons selling, offering to sell, soliciting orders for or delivery by trucks of goods, wares and merchandise in the City of Cocoa."

The ordinance may be invalid for a number of reasons, but it is so clearly invalid because of its attempted discrimination that it is not necessary to mention other defects. Under the terms of this ordinance it is proposed to impose a license tax on a salesman who takes orders in the City of Cocoa for goods to be afterwards delivered to the customer by one doing business in this State as in this case, Farris & Company, of the City of Jacksonville, while it exempts from the provisions of the ordinance a like salesman taking orders for like merchandise to be delivered in like manner by one doing business in some other State or county. It would not apply to a salesman of a meat packing company located just over the Georgia line. The ordinance is a revenue measure.

In *Ex Parte* Smith, 100 Fla. 1, 128 Sou. 864, this Court said:

"The difference in the place of production or origin affords no ground for discrimination in revenue measures between persons selling or delivering the same kind of goods in the same manner and under like circumstances.

Arbitrary discrimination cannot be accomplished under the guise of classification. The effect of the proviso in Section 1 is to create and enforce a discrimination not based upon differences in the nature of the business being transacted, nor upon differences in the manner of conducting the same business, nor upon any difference other than the difference in the place of origin of the commodities. The exemption of dairy, poultry and farm products is generally regarded as permissible in revenue measures imposing license taxes (see Cahoon v. Smith, 128 So. 632, decided May 21, 1930), although such an exemption has been condemned in police measures. See Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; State v. Cudahy Packing Co., 33 Mont. 179, 82 P. 833, 114 Am. St. Rep. 804; 8 Ann. Cas. 717. The proviso here in question, however, does not exempt dairy, poultry and farm products generally, wherever produced or grown, but exempts only those raised, grown or manufactured in the State of Florida. The boundary line of the State, and that alone, determines the operation of the proviso. If the products are produced in Florida no license is required. If not, the license must be paid. The courts are unanimous in condemning such a basis of classification for purposes of taxation."

Where the question presented and considered is that of unjust discrimination only, it can make no difference whether the discrimination is exercised in favor of a resident of the State against a resident of some other State or country, or is exercised against a resident of the State in favor of the residents of other States and countries. The unjust discrimination in either case constitutes a violation of organic law.

For the reasons stated, the judgment is reversed and the

cause remanded with directions that the court below enter an order discharging the petitioner.

It is so ordered. .

Reversed and remanded.

DAVIS, C. J., and ELLIS, TERRELL, and BUFORD, J. J., concur.

DAVIS, C. J. (concurring specially).—I concur in holding the ordinance invalid but because of slightly different reasons than those given by Mr. Justice BUFORD.

The business affected by the ordinance here brought in question is not a purely local business, but constitutes a part of the general trade and commerce that goes on between merchants in Jacksonville and their customers in Cocoa. Admittedly the municipal authorities of Cocoa have no *extra-territorial* power to directly tax trade and commerce of merchants located in the City of Jacksonville. On the same principle, such authorities have no legal right to indirectly do the same thing by singling out for taxation in Cocoa one constituent or indispensable element of that trade and commerce, without which such commerce could not be carried on, such as the delivery of the goods in the course of carrying on such trade and commerce.

The taxing power of a State or city is not a power that can be extra-territorially exerted, directly or indirectly. Buck v. Beach, 206 U. S. 392, 27 Sup. Ct. Rep. 712, 51 L. Ed. 1106. So it is that the power to place a special tax upon commerce and trade carried on between two cities is one which must be exercised by the State alone, since only the State has the territorial jurisdiction to sustain that kind of tax.

I do not think the exception in favor of exempting interstate and foreign commerce from the ordinance renders the ordinance unconstitutionally discriminatory under the Fed-

eral Constitution, since such a discrimination in favor of interstate and foreign commerce is not only permissible, but is required by the Federal Constitution itself to be made.

ELLIS, J. (concurring specially).—I agree to the conclusion reached in the opinion by Mr. Justice BUFORD but upon the ground that the municipality of the City of Cocoa had not been empowered by the Legislature to impose the license tax provided for in Section 4 of its ordinance numbered 1107 for the alleged violation of which plaintiff in error Duffin was arrested and imprisoned. The Charter of the City, Chapter 13963, Laws of 1929, contains no provisions which under the rules for statutory construction, and in view of the doctrine that municipalities have no power other than that which is granted by the Legislature and any reasonable doubt as to any attempted exercise of power shall be resolvent against the corporation (See 3 McQuillin on Municipal Corporations, 451; Galloway v. Tavares, 37 Fla. 58, 19 South. Rep. 170), can be construed to vest the city with the power to impose the tax attempted to be collected in this case. The tax attempted to be imposed was not *eo nomine* a tax on a business carried on between two cities. If it was it is obviously bad because of the lack of extra-territorial taxing power.

The ordinance was attempted to be applied to a person who took orders from merchants for food supplies to be delivered in the future and who on subsequent trips made delivery on such orders. It was not a question of where the goods came from, the meat plant may have been located in the city, under the terms of the ordinance the salesman would have been liable. The point is no power exists in the municipality under its charter or the general provisions of law to impose such a tax.

Therefore, I think the judgment should be reversed.

PER CURIAM.—This case is before us for consideration after rehearing was granted pursuant to the opinions being filed herein on November 16th, 1933.

The ordinance was set out in the original majority opinion. The stipulation of facts was also set out in the majority opinion.

Mr. Chief Justice DAVIS in his specially concurring opinion heretofore filed clearly states the fundamental infirmity of the ordinance.

That this ordinance attempts to confer extra-territorial jurisdiction on the municipality cannot be doubted.

While the question of interstate commerce is not involved here, the question that is involved is analogous to the question which is presented when a State statute attempts to authorize the exercise of power which affects interstate commerce and the State thereby attempts to exercise extra-territorial jurisdiction. The fact that the State is attempting to exercise exra-territorial jurisdiction is what brings the statute into conflict with the inhibition against legislation affecting interstate commerce. In a note following Wagner v. City of Covington, 251 U. S. 95, 64 Law Ed. 157, page 159, it is said:

"A municipal ordinance imposing a license tax upon peddlers is invalid, as a restraint upon interstate commerce, in so far as it is made to apply to the solicitor for a non-resident tea house, who solicits orders for teas, coffees, etc., when such orders are sent to the home office, where they are put up in packages according to the quantities designated by the solicitor, but without the purchaser's name being written on the package, and are shipped back to the solicitor, who gets them from the railroad station, delivers them to the purchasers, collecting the price. Jewel Tea Co. v. Lee's Summit, 189 Fed. 280. The Court stated that the shipment

of goods from the home office to the solicitor, the draying of them from the depot to the street in front of the customer's house and the carrying them into the house, are all parts of one transaction, and that transaction is interstate commerce. A shipment like that cannot be divided into parts, so as to make one or more parts an intrastate shipment. They must all be taken and regarded as one shipment, and when across a State line it is an interstate shipment, and is covered by the commerce clause of the Federal Constitution."

. Upon the same reasoning, we come to the conclusion that when a salesman takes an order in the City of Cocoa, which order is sent to the City of Jacksonville for approval and is there approved by the dealer and the order is then shipped to the City of Cocoa, either by truck or otherwise, and there delivered to the purchaser, that such transaction can not be divided into parts so as to make one or more parts of the transaction amenable to the ordinances of the City of Cocoa, while the other parts of the transaction occurred beyond the jurisdiction of the City and cannot be reached by an ordinance imposing a municipal tax in the City of Cocoa thereon. They must all be taken and regarded as constituting one transaction or shipment of goods from a vendor in one municipality to a vendee in another municipality. And, for this reason, the transaction is not within the jurisdiction of the vendee's municipality. For other analogous cases involving transactions coming within the purview of the interstate commerce clause of the Federal Constitution, see the note above cited.

. In Buck, Trustee, v. Beach, 206 U. S. 392, 51 Law Ed. 1106, the Supreme Court of the United States said:

"Generally, property, in order to be subject to taxation, must be within the jurisdiction of the power assuming to

tax. State Tax on Foreign-held Bonds, 15 Wall. 300, 21 Law Ed. 179; New York, L. E. & W. R. Co. v. Pennsylvania, 153 U. S. 628, 646, 38 L. Ed. 846, 852, 14 Sup. Ct. Rep. 952; Savings & L. Soc. v. Multnomah County, 169 U. S. 421, 427, 42 L. Ed. 803, 805, 18 Sup. Ct. Rep. 392; Louisville & J. Ferry Co. v. Kentucky, 188 U. S. 385, 47 L. Ed. 513, 23 Sup. Ct. Rep. 463; Delaware, L. & W. R. Co. v. Pennsylvania, 198 U. S. 342, 49 L. Ed. 1077, 25 Sup. Ct. Rep. 669; Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 50 L. Ed. 150, 26 Sup Ct. Rep. 36; Metropolitan Life Ins. Co. v. New Orleans, 205 U. S. 395, *ante*, 853, 27 Sup. Ct. Rep. 499."

The City of Cocoa is not authorized, and we seriously doubt that it could be authorized by legislative enactment, to levy a tax on a business or occupation transacted or performed in some other municipality.

In Wagner v. City of Covington, *supra*, the Court said:

"The distinction between State regulation of peddlers and the attempt to impose like regulations upon drummers who solicit sales of goods that are to be thereafter transported in interstate commerce has always been recognized. In Robbins v. Shelby Taxing Dist., 120 U. S. 489, 30 L. Ed. 694, 1 Inters. Com. Rep. 45, 7 Sup. Ct. Rep. 592, Mr. Justice BRADLEY, who spoke for the Court, said (P. 497):

" 'When goods are sent from one State to another for sale, or in consequence of a sale, they become part of its general property, and amenable to its laws; provided that no discrimination be made against them as goods from another State, and that they be not taxed by reason of being brought from another State, but only taxed in the usual way as other goods are. Brown v. Houston, 114 U. S. 622, 29 L. Ed. 257, 5 Sup. Ct. Rep. 1091; Howe Mach. Co. v. Gage, 100 U. S. 676, 25 L. Ed. 754. But to tax the sale

of such goods, or the offer to sell them, before they are brought into the State, is a very different thing and seems to us clearly a tax on interstate commerce.'

"See also Crenshaw v. Arkansas, 227 U. S. 389, 399, 400, 57 L. Ed. 565, 568, 569, 33 Sup. Ct. Rep. 294, where the distinction was clearly set forth. And in all the 'drummer cases' the fact has appeared that there was no selling from a stock of goods carried for the purpose, but only a solicitation of sales, with or without the exhibition of samples; the goods sold to be thereafter transported from without the State." (Citing numerous cases.)

By analogy what was said in that case applies here.

It was stated at the bar of this Court that the legislative Act under which the municipality purported to impose the license tax had been materially amended by the Legislature of 1933. Such amended Act is not before us and we do not here express any opinion either as to its lawful application or validity.

For the reasons stated, the judgment heretofore entered reversing and remanding the cause is adhered to.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS and BROWN, J. J., concur specially.

ELLIS, J. (concurring specially).—I adhere to the conclusion originally announced by Mr. Justice BUFORD, filed November 26, 1933, for the reasons expressed in my specially concurring opinion filed on the same date.

BROWN, J. (concurring specially).—I concur in the judgment of reversal for the reasons stated by Mr. Justice ELLIS in his special concurring opinion upon the original decision in this case on November 26, 1933, based upon the city's lack of charter power to impose a license tax of this nature.