**BURDINE'S, Inc., et al v. CITY OF KEY WEST, et al.**

Circuit Court, Monroe County.

February 17, 1954.

Evans, Mershon, Sawyer, Johnston & Simmons, Miami, for plaintiffs.

J. Y. Porter, Key West, for defendants.

AQUILINO LOPEZ, Jr., Circuit Judge.

This cause came on to be heard before me on the bill for injunction filed by the plaintiffs, answer thereto filed the defendants, and a stipulation by counsel submitting the cause for decision by the court on bill, answer and briefs.

Burdine's, Inc. (hereafter referred to as "Burdine's"), one of the plaintiffs, alleged in its bill—

That it is engaged in the operation of department stores in South Florida and has its principal place of business in Miami, and that a part of the service which it renders its customers is delivery of merchandise purchased at its stores; that the merchandise is delivered by trucks which it owns and operates, and that free delivery service has been extended to residents of Key West and the Florida Keys; that Tony Pappain, the other plaintiff, is the driver of the truck employed by Burdine's to make deliveries and that deliveries were made on December 11, 1953 to customers residing in Key West who had purchased merchandise in the Burdine's store in Miami.

That on December 14, 1953 at a special meeting of the Key West city commission, as an emergency measure, ordinance #422 was enacted, the first section of which provided—

"That section 32.4 of the code of the city of Key West, 1952, be amended by adding a new item thereunder, to be known as item (156-1), to read as follows:

RETAIL STORES—Retail stores having no place of business within the city limits, but making deliveries of merchandise at retail to consumers in the city and said retail stores having no retail outlet or place of business containing personal property or stock to be used in connection with the conduct of its business upon which personal property assessments may be made_____$2,500.00."

That Tony Pappain is authorized to drive and that Burdine's has paid all taxes and licenses required to be paid for the operation of department stores by the city of Miami, county of Dade, and state of Florida, and that the motor vehicles used by the store in the delivery of goods or proposed to be used are duly licensed; that Burdine's operates no retail store and has no place of business within the city limits of Key West; that upon the passage of the ordinance the store stopped the deliveries for the reason that the city threatened to arrest its employee, Tony Pappain, for not complying with the ordinance; that the maximum license fee paid by other similar occupations—differing primarily only with respect to the location of the place of business—is only $250, as shown by item 117 of chapter 32, section 32.4 of the Key West city code.

Burdine's contended that ordinance #422 is unconstitutional, invalid, void and of no force and effect because—

It is arbitrary and unreasonable.

It is discriminatory, discriminating against merchants having no place of business in Key West in favor of merchants having a place of business there.

It is unconstitutional in that it attempts to confer extraterritorial jurisdiction upon the city of Key West.

The city is not authorized by its charter to levy any such license tax as is attempted to be levied by the ordinance.

The ordinance deprives plaintiff Burdine's of rights guaranteed to it by the 14th amendment to the federal constitution and section 12 of the declaration of rights of the state constitution.

The ordinance deprives the plaintiff Tony Pappain of rights guaranteed to him by the 14th amendment and article 4, section 2, federal constitution, and section 12 of the declaration of rights of the state constitution.

The ordinance is of no effect because it is in conflict with section 320.24, Florida Statutes 1951, which provides—*"Counties and municipalities may not impose licenses on motor vehicles, etc.*—It is unlawful for any county or municipality to collect any license or registration fee on any motor-driven vehicle, trailer, semi-trailer or motorcycle sidecar in this state."

The ordinance was not validly passed in that there was no basis for its enactment as an emergency measure.

Defendants filed their answer admitting that the plaintiffs have no place of business within the city limits of Key West, and have no retail outlet or place of business containing personal property or stock to be used in connection with its business. They also denied most of the other allegations in the bill, excepting those matters of which they were without knowledge and therefore neither admitted nor denied—which amounts to a denial.

The court finds that this ordinance is invalid for a number of reasons, to-wit—

It is arbitrary, unreasonable and discriminatory in that it attempts to levy a license tax of $2,500 on a retail store having no place of business within the city limits when if the store had a place of business within the city limits and stock not exceeding $1,000 the license tax would be $50, and if it had stock not exceeding $15,000 the tax would be only $250. An examination of item 117 of chapter 32, section 32.4 of the city code discloses that the highest license tax levied by the city against any business is the sum of $1,250.

The ordinance is also invalid in that it attempts to confer extraterritorial jurisdiction on the city of Key West inasmuch as the plaintiff Burdine's is not doing business in the city because the business transaction is completed in its store outside the city, and the only thing that Burdine's does in the city is deliver merchandise on its trucks to persons in the city who have given prior thereto, in person or by mail or some other means, their orders to Burdine's stores outside the city for such merchandise.

Lane v. Williams, 160 Fla. 867, 37 So. 2d 163, holds that salesmen employed by a Jacksonville company could solicit orders for merchandise from regular customers in the city of Jasper, their practice being to follow a regular route every two weeks, call upon regular customers and solicit orders for delivery to be made the next trip. Sometimes there were occasional sales on the spot to regular customers of shop worn samples or refused merchandise which did not exceed 5% of the gross sales for any trip—the city maintained that because they made these sales the salesmen had to obtain a license, but the Supreme Court ruled that they need not do so.

The leading case on this subject is Duffin v. Tucker (1934), 113 Fla. 621, 153 So. 298, which is cited repeatedly and which is still the law. The city of Cocoa passed an ordinance which required a

license fee to be paid by all persons selling certain types of merchandise but exempted interstate and foreign commerce, and provided that out of town merchants who employed salesmen should pay a license fee for each salesman employed in the city—but local merchants should pay only one license fee no matter how many salesmen they employed. In that case our Supreme Court said at page 299 of 153 So.—"That ordinance may be invalid for a number of reasons, but it is so clearly invalid because of its attempted discrimination that it is not necessary to mention other defects." Further, at page 300—

> "The business affected by the ordinance here brought in question is not a purely local business, but constitutes a part of the general trade and commerce that goes on between merchants in Jacksonville and their customers in Cocoa. Admittedly the municipal authorities of Cocoa have no extraterritorial power to directly tax trade and commerce of merchants located in the city of Jacksonville. On the same principle such authorities have no legal right to indirectly do the same thing by singling out for taxation in Cocoa one constituent or indispensable element of that trade and commerce, without which such commerce could not be carried on, such as the delivery of the goods in the course of carrying on such trade and commerce."

On rehearing the high court condemned the practice attempted by the city of Cocoa, adhered to its former ruling, and said at page 301—"Mr. Justice Davis in his specially concurring opinion heretofore filed clearly states the fundamental infirmity of the order. That this ordinance attempts to confer extraterritorial jurisdiction cannot be doubted."

In Hamilton v. Collins (1934), 114 Fla. 276, 154 So. 201, a bread truck salesman was arrested for not having a license as required by the city of Quincy which required that local salesmen should pay a license fee of $10 and out of town salesmen $50. The Court held that insofar as the ordinance attempted to levy a license tax on one who takes orders for delivery from a place of manufacture beyond the city limits where the orders are accepted and then shipped to the purchaser, the ordinance was invalid. Further, that insofar as it affected sales made in the city, the license tax was also invalid because of unjust discrimination.

In Masters v. Cobb (1933), 111 Fla. 267, 149 So. 337, the Supreme Court held that a truck driver for a Jacksonville organization delivering purchases in a city which had an ordinance requiring a license upon trucks and vehicles of persons doing business and/or delivering to or from merchants not otherwise licensed did

not have to pay a license tax, the Court holding that a city could not levy such a license tax on vehicles which merely delivered goods because such an ordinance contravened the state statute, unless the municipality was given the power by its charter.

In Ward Baking Co. v. City of Fernandina, 29 Fed. 2d 789, the federal court held that where an ordinance plainly discriminates between residents and nonresidents engaged in the same occupation, it is invalid in that it violates provisions of the federal constitution prohibiting any state from making or enforcing any law which abridges the privileges or immunities of citizens of the United States, and prohibiting any state from depriving any person of property without due process of law, and from denying any person the equal protection of the laws.

It is ordered, adjudged and decreed—(1) That said ordinance #422 enacted by the city of Key West is declared to be invalid and unconstitutional. (2) That the temporary injunction heretofore entered is hereby made permanent. (3) That the bond filed in connection with the temporary injunction is hereby canceled and the principal and surety are released from further liability thereon. (4) That the plaintiffs do have and recover from the defendants all costs herein incurred.