ROBERTS, Chief Justice.
We here review by conflict certiorari three consolidated cases involving the pow *421 er of municipalities to require occupational licenses of outside businesses rendering services upon occasion within their municipal limits. In separate declaratory judgment actions initiated by petitioners, the Circuit Court, Dade County, held that the respondent municipalities could not require that petitioners obtain occupational licenses as a condition precedent to doing business within respondents’ corporate limits. Upon respondents’ appeals, the District Court of Appeal, Third District, reversed in each case: See City of Miami Beach v. Solomon, 228 So.2d 437 (3rd DCA Fla. 1969), and City of West Miami v. Isern [consolidated with City of West Miami v. Chas. T. Pierce & Sons, Inc.], 229 So.2d 612 (3rd DCA Fla.1970).
Our jurisdiction over these causes results from conflict between the above cited cases and two decisions rendered by this Court: City of Pompano Beach v. Berry, 168 So.2d 135 (Fla. 1964) [affirming Berry v. City of Dania, 24 Fla.Supp. 152 (Cir.Ct.1963)], and Duff in v. Tucker, 113 Fla. 621, 153 So. 298 (1933; affirmed on rehearing, 1934).
Specifically, petitioners are engaged in termite and pest control activities; included in their services are the fumigation of dwellings and buildings, and the treatment of infested lawns. Their places of business, along with all supplies and equipment used in plying their trade, are located in Dade County municipalities outside the jurisdiction of respondents: Mr. Isern’s Econo-Way Exterminating Company, Inc. is located in Hialeah; Charles T. Pierce & Sons, Inc. is located in Miami; Mr. Solomon’s Eveready Pest Control Service, Inc. is also located in Miami. All of the petitioners are fully licensed to engage in pest control by the State of Florida under Chapter 482 of the Florida Statutes. Each holds an occupational license issued by both Dade County and the municipalities within which the respective businesses are located. Petitioners operate within the respondent City of Miami Beach and the respondent City of West Miami only when service to a customer requires it; of course, they hold themselves out as being available for hire throughout all of Dade County.
The municipal ordinances under review are in the nature of general occupational license ordinances of the type provided for by Fla.Stat. § 167.43, F.S.A. They contain an extensive listing of activities, including exterminating services, along with a schedule of requiring licensing fees. No person is to engage in or manage any of the activities listed within the municipal limits without first having paid the fee set out in the schedule. See Chapter II, Municipal Code, City of West Miami; also, Chapter 20, Municipal Code, City of Miami Beach. These ordinances are restricted to the raising of revenue. No regulatory provisions appear in either ordinance which might affect exterminating services. Indeed, — and this is of critical importance in this case — the regulation of the pest control industry is a matter preempted by the State of Florida through Chapter 482. Because the ordinances are revenue-oriented and not regulatory, at least as to the exterminating business category, we are not concerned herein with the police powers of the respondent municipalities; rather, we are concerned solely with their taxation powers.
The respondent municipalities contend that although not located within the respondents’ corporate limits, petitioners are nonetheless liable for payment of an exterminator’s license fee because they allegedly perform their services virtually entirely upon the premises of the customer. Thus, service to a customer inhabiting a respondent municipality, in effect, establishes a business location within the municipality which makes the visiting exterminating company liable for the local occupational license tax. Taking this view, respondents sought to enforce their licensing ordinances against petitioners because all of them were engaged in conducting exterminating operations regularly within respondents’ municipal limits.
*422 In the declaratory judgment proceedings below, the Circuit Court held that the respondent municipalities had lost sight of the inherent limitations of their taxing powers. According to the Circuit Court:
“The occupational license is a tax imposed on plaintiffs solely because they perform exterminating work for customers within the city; this necessarily indirectly imposes a tax on that part of plaintiffs operations, in serving said residents of the city, carried on outside the city. The city has no such extra-territorial power, and such-tax is unconstitutional and void. A municipality cannot divide a business transaction into its component parts and levy a revenue tax on the part carried on within the municipality where the effect would be to subject that part of the business carried on elsewhere to the municipality’s tax law. Duffin v. Tucker, Fla. (1934) [113 Fla. 621] 153 So. 298.”
However, upon respondents’ appeals, the District Court reversed because it agreed with respondents that, “The entire performance of a business transaction (spraying, fumigating, etc.) necessarily takes place in one municipality.” 228 So.2d at 439. This being so, according to the District Court, there was no attempt by the respondents to exercise extra-territorial jurisdiction. It was also held that since the licensing ordinances 'applied equally to all exterminating enterprises, whether initially located within respondents’ limits or located therein on a job-by-job basis, no unconstitutional discrimination was present. Duffin v. Tucker, supra, was distinguished on the ground that it involved what was essentially a unified inter-municipal transaction which could not be easily divided into component parts.
Two separate lines df reasoning converge to bring us to the conclusion that the District Court erred in' reversing the final judgments rendered below. First, and most importantly, it is to be remembered that municipalities are without inherent power to levy occupational license taxes; rather, this power is provided in the main by Fla.Stat. § 167.43, F.S.A., which allows for the licensing of professions, businesses and occupations by municipalities. But in certain instances, the Legislature has enacted specific statutes dealing with licensing by municipalities, and where this has been done, these statutes are controlling. Exterminating services fall within this category. The pest control industry is regulated solely by the State through the provisions of Chapter 482, Florida Statutes. A municipality’s authority to license exterminating services must be determined with reference to Chapter' 482.
The first relevant statute under Chapter 482 is Fla.Stat. § 482.071(1), which makes it unlawful for any person to operate a pest control business that has not been licensed, by the State Board of Health. Next, consider Fla.Stat. § 482.081; it specifies that occupational licenses are to be issued by a county or municipality only after a pest control business has a license from the Board of Health for each business location. Fla.Stat. § 482.071 requires that each business location must be licensed. What constitutes a business location subject to licensing is defined by Fla.Stat. § 482.021(3), F.S.A.: “Business location — Any advertised location in or from which pest control business is solicited, accepted and conducted.”
These statutes clearly indicate that Chapter 482 does not contemplate that a municipal license be required for anything less than a business location as defined by Fla.Stat. § 482.021(3), F.S.A. A temporary presence of a fumigation tent or a spraying truck within a municipality, necessitated merely by a job contract, and under control and operation of properly licensed authorities, does not lay a predicate for the municipality to demand that an occupational license be purchased. Pertinent rules of the State Board of Health support this holding; see Board of Health Rule 1701-2.03(1) (a); (3) (a) (c); (4) (a); and (5) (a). These rules indicate *423 that licensing is required only of an established place of business. The Circuit Court below correctly held that in absence of a relatively permanent presence located within the respondent municipalities, the municipalities were without power to require licenses of petitioners. Specifically, the Circuit Court referred to offices or places of business. We note in passing, that besides these a permanent presence would be established by a warehouse or storage facility, or any other related facility which would be involved in the operation of petitioners’ businesses.
Furthermore, our attention is directed to the delicate balance existing between the concept of a municipality’s power to tax for the privilege of doing business within its corporate limits, and the concept of a municipality’s impotence to extend its taxation powers beyond its territorial jurisdiction. In Florida, we have generally held that an activity may not be put under mandate of revenue license if it is inseparable from a scheme of activity outside the licensing municipality’s jurisdictional limits. Thus, in Duffin v. Tucker, supra, we held that solicitation of sales and subsequent delivery of items sold were not subject to local occupational licensing other than by the municipality containing the home office, because of the inter-municipal character of the sales operation. Similarly, in affirming Berry v. City of Dania, supra, through our decision in City of Pompano Beach, supra, we held that a municipality could not require an occupational license of surveyors bringing themselves and their equipment into the municipality solely for the temporary purpose of conducting physical land surveys. Consider also, Sand-strom v. City of Fort Lauderdale,' 133 So. 2d 755 (2nd DCA Fla.1961), in which several attorneys brought suit to enjoin the enforcement of a city ordinance levying an occupational tax upon attorneys having offices within the city limits. In Sandstrom the District Court made the point that the ordinance did not deny equal protection of law to the attorneys having their offices within the city limits merely because it was not applicable to attorneys using the city’s facilities, but having offices outside of the city limits.
In the instant cases, we are unable to perceive any sound conceptual difference between the temporary presence of surveyors, the temporary presence of attorneys, or the temporary presence of salesmen and the subsequent delivery of goods, and the temporary presence of petitioners’ fumigation equipment pursuant to a contract executed in another municipality. Incursion of petitioners’ equipment into the respondent municipalities is only part of the chain of services rendered by petitioners. By attempting to require licenses for the presence of the equipment and services rendered, respondents necessarily levy as well a license tax upon the inter-municipal delivery and removal of the equipment, manpower and supplies involved; in addition, they necessarily are levying a license tax upon the executive functions of petitioners which are conducted at their places of business. The point was made in Berry v. City of Dania, 24 Fla. Supp. at 154.
“It is well established in Florida that any attempt by a municipality to extend its taxing power beyond its territorial limits is unconstitutional and void. Duf-fin v. Tucker (Fla.1934), [113 Fla. 621] 153 So. 298; Bozeman v. City or Brooks-ville (Fla.1955), 82 So.2d 729. A municipality cannot divide a business transaction into its component parts and levy a revenue tax on the part carried on within the municipality where the effect would be to subject a business carried on elsewhere to the municipality’s tax laws. Duffin v. Tucker, supra. Since the inhibition against a municipality exercising extra-territorial taxing jurisdiction is based on constitutional grounds, the provisions of the charters of several of the defendant municipalities authorizing the licensing of businesses carried on either wholly or in part within the corporate limits are ineffectual insofar as they purport to confer extra-territori *424 al taxing jurisdiction to said municipalities. Duf fin y. Tucker, supra; Langston v. Lundsford (Fla.1936), [122 Fla. 813] 165 So. 898.”
In summation, we hold that the preemption by the State of the regulation of the pest control industry has produced a controlling licensing policy requiring licensing only of places of business; accordingly, a municipality is not at liberty to impose a license tax upon pest control operations only temporarily located within the municipality unless it can be shown that an effective place of business within the meaning of the preemptive statutes has been created. We also hold that the transactions sought to be licensed by the respondents were essentially composed of inseparable operations, each contributing to the completion of the task under contract.
The decisions of the District Court of Appeal, Third District, now under review are quashed and these consolidated cases are remanded with instructions that the judgments of the Circuit Court be reinstated.
It is so ordered.
CARLTON, ADKINS, BOYD and DREW (Retired), JJ., WIGGINTON, District Court Judge and CHRISTIE, Circuit Judge, concur.