QUESTION: Can a municipality charge an occupational license tax to a certified contractor who does not have a permanent business location or branch office within the municipality but is merely performing a contractual job within the municipality while maintaining a permanent business location or branch office in another municipality and who has paid an occupational license tax to the municipality where the permanent business location and/or branch office is located?
SUMMARY: A municipality cannot levy an occupational license tax on a certified contractor who does not maintain a permanent business location or branch office within the municipality but is merely performing a contractual job within the municipality while maintaining a permanent business location or branch office in another municipality and who has paid an occupational license tax to the municipality where the permanent business location and/or branch office is located. Your question is answered in the negative for the reasons set forth hereinafter. As stated in your letter, the individual involved does not maintain a permanent business location or branch office in the municipality in question. Section 166.201, F. S., provides that: A municipality may raise, by taxation and licenses authorized by the Constitution or general law, or by user charges or fees authorized by ordinance, amounts of money which are necessary for the conduct of municipal government and may enforce their receipt and collection in the manner prescribed by ordinance not inconsistent with law. Chapter 205, F. S., is the authority for the imposition of municipal occupational license taxes for revenue purposes. Section205.022(1) provides that: "Local occupational license" means the method by which a local governing authority grants the privilege of engaging in or managing any business, profession, or occupation within its jurisdiction. It shall not mean any fees or licenses paid to any board, commission, or officer for permits, registration, examination, or inspection. Unless otherwise provided by law, these are deemed to be regulatory and in addition to, and not in lieu of, any local occupational license imposed under the provisions of this chapter. In s. 205.042, F. S., the Legislature specifically enumerated those persons upon whom a municipality may levy an occupational license tax, to wit: (1) Any person who maintains a permanent business location or branch office within said municipality, for the privilege of engaging in or managing any business within its jurisdiction. (2) Any person who maintains a permanent business location or branch office within said municipality, for the privilege of engaging in or managing any profession or occupation within its jurisdiction. This section has made it clear that a potential licensee must fall within one of the above two categories before a municipality may impose an occupational license tax. Under the two categories, a person may conduct any business, profession, or occupation within a municipality without being subject to a municipal occupational license tax unless he maintains a permanent business location or branch office therein. Isern v. City of West Miami, 244 So.2d 420
(Fla. 1971); Duffin v. Tucker, 153 So. 298 (Fla. 1954); Berry v. City of Dania, 24 Fla. Supp. 152, aff'd, 168 So.2d 135 (Fla. 1964). Accord: Attorney General Opinions 072-117, 072-236, 073-172, 073-399, 075-208, and 075-251. However, the fact that a person may be permanently located and licensed in one municipality does not necessarily preclude licensing elsewhere by another municipality. City of Lakeland v. Lawson Music Co., 301 So.2d 506
(2 D.C.A. Fla., 1974), approved in Alco Services, Inc. v. City of Hollywood, 315 So.2d 110 (4 D.C.A. Fla., 1975); AGO 075-251. Under s. 205.042(1), supra, the certified or noncertified status of the contractor is immaterial because that status relates exclusively to licensing for regulatory purposes. See, generally AGO's 074-112 and 073-399; see also part II of Ch. 468, F. S. The two issues presented by your inquiry which must be resolved are whether the contractor can be said to be operating a "permanent business location or branch office" within the purview of s. 205.042, supra, and whether an activity may be put under mandate of revenue license, as in the instant case, if it is inseparable from a scheme of activity outside the licensing municipality's jurisdictional limits. In Isern v. City of West Miami, supra, the Florida Supreme Court was faced with the following factual situation and dealt with the first of the two issues involved in this opinion in the following manner. In that case, the individuals were engaged in termite and pest control activities; included in their services were the fumigation of dwellings and buildings and the treatment of infested lawns. Their places of business, along with all supplies and equipment used in plying their trade, were located outside the jurisdiction of the taxing municipalities. The municipalities in that case contended that, although not located within their corporate limits, the individuals were nonetheless liable for payment of an exterminator's license fee because they allegedly performed their services virtually entirely upon the premises of the consumer. Thus, their contention went, service to a customer inhabiting a municipality in effect established a business location within the taxing municipality which made the visiting exterminating company liable for the local occupational license tax. The court held that a temporary presence of a fumigation tent or a spray truck within a municipality, necessitated merely by a job contract and under control and operation of properly licensed authorities, does not lay a predicate for the municipality to demand that an occupational license be purchased. Thus, the court concluded, in absence of a relatively permanent presence located within the taxing municipality, the municipality was without power to require an occupational license of the exterminating company. The court did note in passing that a permanent presence would be established by a warehouse or storage facility or any other related facility which would be involved in the operation of the exterminating company's business. I recognize that the question of what constitutes a "permanent business location" requires legislative or judicial findings of fact which are beyond the scope of my powers as Attorney General. See AGO's 075-208 and 072-236. I, therefore, am not prepared to say that the performance of any one or a number of construction contracts could never fall within the scope of the statute. It seems doubtful, however, that a typical project or projects, standing alone, would provide a sufficient basis for licensing. Section 205.042(1) and (2), F. S., appears to focus on enterprises established as a continuing presence in the community, from which the individual performs administrative and executive functions of the business as a whole, and not on the temporary presence of the typical construction crew on a construction project, whose presence is necessitated merely by the job contract. The court dealt with the second issue of whether an activity may be put under the mandate of a revenue license if it is inseparable from a scheme of activity outside the licensing municipality's jurisdictional limits, stating that: In Florida, we have generally held that an activity may not be put under mandate of revenue license if it is inseparable from a scheme of activity (Emphasis supplied.) outside the licensing municipality's jurisdictional limits. Thus, in Duffin v. Tucker, supra, we held that solicitation of sales and subsequent delivery of items sold were not subject to local occupational licensing other than by the municipality containing the home office, because of the inter-municipal character of the sales operation. Similarly, in affirming Berry v. City of Dania, supra, through our decision in City of Pompano Beach, supra, we held that a municipality could not require an occupational license of surveyors bringing themselves and their equipment into the municipality solely for the temporary purpose of conducting physical land surveys. Consider also, Sandstrom v. City of Fort Lauderdale, 133 So.2d 755
(2nd DCA Fla. 1961), in which several attorneys brought suit to enjoin the enforcement of a city ordinance levying an occupational tax upon attorneys having offices within the city limits. In Sandstrom the District Court made the point that the ordinance did not deny equal protection of law to the attorneys having their offices within the city limits merely because it was not applicable to attorneys using the city's facilities, but having offices outside of the city limits. [244 So.2d at 423] Thus, it has been well established in Florida that any attempt by a municipality to extend its taxing power beyond its territorial limits is unconstitutional and void. Duffin v. Tucker, supra; Isern v. City of West Miami, supra; Boseman v. City of Brooksville, 82 So.2d 729 (Fla. 1955); Berry et al. v. City of Dania, et al., supra. Likewise, a municipality cannot divide a business transaction into its component parts and levy a revenue tax on the part carried on within the municipality when the effect would be to subject a business carried on elsewhere to the municipality's tax laws where the transactions sought to be licensed by the municipality are
essentially composed of inseparable operations, each contributing to the completion of the whole project under contract. In the instant case, I am unable to perceive any sound conceptual difference between the temporary presence of surveyors, the temporary presence of attorneys, the temporary presence of exterminating companies, the temporary presence of mobile canteen wagons, or the temporary presence of salesmen and the subsequent delivery of goods and the temporary presence of the contractor and his equipment pursuant to a contract executed in or administered from another municipality in which his permanent business location or branch office is located. Incursion of the contractor's equipment into the taxing municipality where the contract is to be performed is only part of the chain of services rendered by the contractor. By attempting to require licenses for the presence of the equipment and services rendered, the taxing municipality is necessarily levying as well a license tax upon the inter-municipal delivery and removal of the equipment, manpower, and supplies involved; in addition, the taxing municipality necessarily is levying a license tax upon the executive and administrative functions of the contractor which are conducted at his permanent business location or branch office located outside the jurisdiction of the taxing municipality.