Thomas A. Bustin City Attorney Clearwater
QUESTION:
Is a business that publishes or prints a television guide outside the municipality's jurisdiction and distributes such publication to hotels within the municipality and throughout the state to hotels, and which also engages in such business in states other than Florida, subject to the occupational license tax pursuant to s. 205.042(3), F. S.?
SUMMARY:
A business that publishes and prints television guides outside a taxing municipality's jurisdiction and distributes such publications to hotels within the municipality and throughout Florida, and whose sales representatives solicit advertising within the taxing municipality which is run in television guides subsequently published and delivered to hotels within the municipality from which the guides are distributed by such hotels to their guests and others, is not, in the absence of engaging in separable and distinct local activities or incidents other than the solicitation and the delivery, or in the absence of a permanent business location, liable to the occupational license tax provided for in s. 205.042(3), F. S.
Section 205.042, F. S., authorizes the governing body of an incorporated municipality to levy, by appropriate resolution or ordinance, an occupational license tax for the privilege of engaging in or managing any business, profession, or occupation within its jurisdiction. Subsections (1) and (2) of s. 205.042, F. S., provide that the tax may be levied on any person who maintains a permanent business location or branch office within the municipality for the privilege of engaging in or managing, respectively, any business in its jurisdiction, or any profession or occupation within its jurisdiction; whereas subsection (3), upon which your question is founded, authorizes municipalities to levy an occupational license tax on:
 Any person who does not qualify under the provisions of subsection (1) or subsection (2) and who transacts any business or engages in any occupation or profession in interstate commerce, if such license tax is not prohibited by s. 8 of Art. I of the United States Constitution.
The facts set forth in your memorandum of facts indicate that the television guide is published or printed outside the jurisdiction of the City of Clearwater and is distributed through hotels throughout Florida with distribution of the guide occurring from such hotels which receive free advertising on the cover of the guide. One third of the publication is devoted to advertising space which is sold by the publisher of the guide. Although sales representatives of such publisher solicit advertising in the City of Clearwater, no branch office is maintained by the publisher in Clearwater, but rather the business has its principal office in the City of Largo. You state that it has been `represented that such business is also conducted in several other states,' but no evidence has been presented to me to document any such out-of-state business or the nature and extent or details thereof. Apparently, however, any such out-of-state business activities or transactions originate and transpire outside of your city's jurisdiction and any such incidents of `local activity' in other taxing jurisdictions cannot be made the basis or fulcrum to justify or support taxation in and by the City of Clearwater. As stated in AGO 078-52, it is not sufficient to find that this publisher and distributor is engaged in business or in interstate commerce elsewhere, but such publisher must be engaged in business or interstate commerce within the jurisdiction of the City of Clearwater in order for it to fall within the taxing power of the city under s. 205.042(3), F. S. In these circumstances, and assuming that the only local activity or distinct `incident of (any) interstate commerce' taking place within the City of Clearwater is the solicitation of advertising in the city (and subsequent delivery of the television guide to hotels within the city from which the guide is distributed to their guests), the publisher/distributor and its business activities described above do not appear to fall within the purview of s. 205.042(3), F. S. It is apparent that each case must be determined on the basis of its own unique facts, and that the question of what constitutes the transaction of business in interstate commerce or separable and distinct local incidents rendering such interstate business activities or transactions liable to local taxation requires legislative or judicial findings of fact which are beyond the scope of the powers of my office. See AGO's 078-22, 076-234, 075-208, and 072-236. However, unless the publisher/distributor in question engages in separable and distinct local activities or incidents, other than the solicitation of advertisement and the delivery of the television guide to hotels within the city from which the guide is distributed by such hotels to their guests and others, the publisher/distributor would not be liable to taxation within the city under s. 205.042(3), F. S., and any attempted taxation of such solicitation and delivery activities would probably violate the Commerce Clause of the United States Constitution.
Assuming arguendo that the publisher/distributor in question is engaged in interstate commerce, the city may impose an occupational license tax upon the person transacting business in interstate commerce if not prohibited by the Commerce Clause of the United States Constitution. The Commerce Clause does not operate to relieve those engaged in interstate commerce from their just share of the tax burden occasioned by local incidents or activities of such instrumentalities of interstate commerce. See
Armstrong v. City of Tampa, 118 So.2d 195 (Fla. 1960); Green v. Western Union Telegraph Company, 123 So.2d 712 (Fla. 1960); City of Jacksonville v. Florida Fresh Water Corporation, 247 So.2d 739
(1 D.C.A. Fla., 1971). The Armstrong decision, supra at p. 199, sums up the cases interpreting the limitation of s. 8, Art. I of the Constitution of the United States:
 The sum of the cases simply is that if the local tax has the effect of excluding or precluding or impeding the flow of commerce into the between the states then the tax is offensive to the quoted constitutional provision . . . . This is so even though it might not be discriminatory in nature or aimed at interstate commerce for the benefit of intrastate commerce . . . .
In Real Silk Hosiery Mills, Inc. v. City of Portland, 268 U.S. 325
(1925), it was held that a state statute which required persons going from place to place soliciting orders for goods for future delivery, and receiving payment or any deposit of money in advance, to secure a license and give bond conditioned for final delivery of goods ordered, violated the Commerce Clause of the United States Constitution insofar as it was made to apply to agents soliciting orders in a state, which orders were to be forwarded to a manufacturer in another state and filled by C.O.D. shipments.
In Best Co. v. Maxwell, 342 U.S. 389 (1946), the court found that a state statute levying an annual privilege tax of $250 on every person or corporation, not a regular retail merchant in the state, who displayed samples in any room rented or occupied temporarily for the purpose of securing retail orders unconstitutionally discriminated against commerce when the only tax to which regular retail merchants in the state were subject was a tax of $1 per annum for the privilege of doing business, even when they engaged in the sale of goods by sample in display rooms at places other than those in which their retail stores were located.
And, in Memphis Steam Laundry v. Stone, 342 U.S. 389 (1952), the court held that a state tax upon persons soliciting business for laundries not licensed in the state unconstitutionally burdened interstate commerce, whether such tax was regarded as one on the solicitation of business or on the activities of picking up and delivering laundry.
As a general rule, municipal occupational license taxes will not be prohibited if there are sufficient `local incidents' separable from interstate commerce. See AGO's 073-162 and 073-172 and Olan Mills, Inc. v. City of Tallahassee, 100 So.2d 164 (Fla. 1958). The factual determination of what is separable from the scheme of interstate or intermunicipal business activity is to be made in the first instance by local authorities. Attorney General Opinion 073-162. Note that the United States Supreme Court in Nippert v. City of Richmond, 327 U.S. 416 (1946), laid down the rule that it is not sufficient to find `some local incident which might be recognized as separate and distinct' from the interstate commerce because such an approach would subject all interstate commerce to state taxation and without regard to the substantial economic effects of the tax upon the commerce:
 . . . For the situation is difficult to think of in which some incident of an interstate transaction taking place within a state could not be segregated by an act of mental gymnastics and made the fulcrum of the tax. All interstate commerce takes place within the confines of the states and necessarily involves `incidents' occurring within each state through which it passes or with which it is connected in fact. And there is no known limit to the human mind's capacity to carve out from what is an entire or integral economic process particular phases or incidents, label them as `separate and distinct' or `local,' and thus achieve its desired result.
The United States Supreme Court expressed in Nippert concern for the cumulative effect of flat municipal taxes laid in succession upon the itinerant merchant as he passes from town to town. It is apparent that the Florida Supreme Court recognizes the concern expressed in Nippert, for in the Armstrong case, supra, the court found a flat sum license tax, which the City of Tampa attempted to impose, exclusory of interstate commerce, for the simple reason that its tax had to be paid as a condition precedent to engaging in interstate commerce. The court further pointed out that a privilege tax is burdensome for the fact that it is subject to being duplicated by every community entered by the solicitors who are engaged in the interstate transaction.
Several cases in this state have dealt with the issue of municipal taxation of businesses located within the state which do not have a business location or office within the taxing city. In Cason v. Quinby, 53 So. 741 (Fla. 1910), a flat sum privilege tax ordained by the City of Lake City was held uncollectible from the traveling salesman of a nonresident aluminum company. Similarly, in Wilk v. City of Bartow, 97 So. 307 (Fla. 1923), the court held a flat sum privilege tax ordinance of the City of Bartow unenforceable against the well-known Fuller Brush solicitor. In Myers v. City of Miami, 131 So. 375 (Fla. 1930), the City of Miami was held to be without power to collect a flat sum privilege tax from the Real Silk Hosiery solicitors. In Duffin v. Tucker, 153 So. 298 (Fla. 1934), the court held that the solicitation of sales and the subsequent delivery of the items sold were not subject to local occupational licensing other than by the municipality wherein the home office was located because of the intermunicipal character of the sales operation. And finally, in Olan Mills, Inc., supra, it was held that a fixed sum license tax imposed upon photographers as a condition to exercising the privilege of engaging in that business was uncollectible from solicitors representing a nonresident photographer whose business constituted interstate commerce.
The effect of the foregoing case law was that the city could not carve out of the interstate (or the intermunicipal) process the incident of solicitation as a separate and distinct aspect of the transaction upon which the tax could be imposed. As noted in Isern v. City of West Miami, 244 So.2d 420 (Fla. 1971), it generally has been held that an activity may not be put under mandate to revenue license if it is inseparable from a scheme of activity outside the licensing municipality's jurisdictional limits. Cf. AGO 076-234. Moreover, pursuant to s. 205.063, F. S., vehicles used by any person licensed under Ch. 205, F. S., for the sale and delivery of tangible personal property at either wholesale or retail from his place of business on which a license is paid shall not be construed to be a separate place of business, and no license may be levied on such vehicles or the operators thereof as salesmen or otherwise by a municipality, any other law to the contrary notwithstanding. Cf. Con Agra v. City of Pensacola, 286 So.2d 605
(1 D.C.A. Fla., 1973), holding that a city ordinance imposing a license for the privilege of using the city's streets for distributing or delivering merchandise by a wholesaler located and licensed in another county contravened the precursor statute of s.205.063, F. S., containing essentially the same provisions.
The case of West Point Wholesale Groc. Co. v. City of Opelika,354 U.S. 390 (1957), presented a factual situation analogous to yours. There, the city imposed a flat sum annual privilege tax of $250 upon any firm engaging in the wholesale grocery business which delivered groceries in the city from points outside the city. The appellant's only contact with the city was the solicitation of orders and the delivery of goods. The court relied on Nippert,supra, in holding that the city could not impose the tax since such tax, being based only on appellant's minimal contact with the city, would have a substantial exclusory effect on interstate commerce.
And, in Dunbar-Stanley Studios, Inc. v. Alabama, 393 U.S. 537
(1969), the court, in finding the act of photography to be a local activity, separable from the interstate process on which the license tax could be levied, held that solicitation and delivery were minimal activities within a state and without which the interstate commerce could not exist.
Other factors, in addition to solicitation and delivery, that should be considered are: Where the advertising and distribution contracts are entered into; where the orders for the advertisements or publications are accepted or approved; and where payment for the advertising or publications is made. The occurrence of these activities within the city limits appears to provide a `separable local incident' upon which an occupational license tax can be imposed. See Graybar Electric Co. v. Curry,189 So. 186 (Ala. 1939); aff'd, 308 U.S. 513 (1939).
In the final analysis, I am unable to perceive any sound conceptual difference between the temporary presence of salesmen or solicitors and the subsequent delivery of goods (as in the foregoing cases), and the solicitation of advertisements and the subsequent delivery of the publication containing such advertisements (as in your case). Accordingly, your question, as stated, is answered in the negative.
Prepared by: Maxie Broome, Jr., Assistant Attorney General