Mr. Frank B. Gummey, III City Attorney City of Daytona Beach Post Office Box 551 Daytona Beach, Florida 32015
Dear Mr. Gummey:
You have asked the following question:
 IS AN INSURANCE COMPANY WHICH ENGAGES IN INTERSTATE COMMERCE AND DOES BUSINESS WITHIN A MUNICIPALITY BUT DOES NOT MAINTAIN A PERMANENT BUSINESS LOCATION WITHIN THAT MUNICIPALITY SUBJECT TO THE MUNICIPALITY'S OCCUPATIONAL LICENSE TAX PURSUANT TO s. 205.042(3), F.S.?
Section 205.042, F.S., provides that a municipality's governing body "may levy, by appropriate resolution or ordinance, an occupational license tax for the privilege of engaging in or managing any business, profession, or occupation within its jurisdiction." Section 205.042(1) and (2), F.S., authorizes the levy of an occupational license tax on persons who maintain a permanent business location or branch office within a municipality for the privilege of engaging in or managing any business, profession or occupation within its jurisdiction. Section205.042(3), F.S., provides that an occupational license tax may be levied on:
 Any person who does not qualify under the provisions of subsection (1) or subsection (2) and who transacts any business or engages in any occupation or profession in interstate commerce, if such license tax is not prohibited by s. 8 of Art. I of the United States Constitution.
Congress has enacted legislation to permit state regulation and taxation of the business of insurance. See, 15 U.S.C. § 1011
(1982), in which Congress declares that taxation of the business of insurance by the several states is in the public interest; and15 U.S.C. § 1012(a) (1982), providing that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business."
The imposition of a municipal occupational license tax on an insurance company which engages in interstate commerce and does business within a municipality in Florida therefore would not appear to be prohibited by the Commerce Clause, s. 8, Art. I, U.S. Const. See, Prudential Insurance Company v. Benjamin, 328 U.S. 406
(1945) (McCarran-Ferguson Act [15 U.S.C. § 1011 et seq.] was valid exercise of Congress' plenary power over interstate commerce and authorized state tax on foreign insurers).
This office previously concluded in AGO 73-162 that s. 205.042(3) did not authorize municipal levy of an occupational license tax in a factual context similar to your inquiry. The opinion concerned an out-of-state insurer or representative without an office or residence in the municipality. It concluded that the levy of the occupational license tax was not authorized where executive or administrative functions in processing and issuing policies were not readily separable from local activities and were inseparable parts of an overall business scheme including extraterritorial activities. The opinion emphasized that the separability of local activities is a factual determination to be made by local authorities. However, the opinion relied on several Florida judicial decisions in concluding that the solicitation and delivery of insurance policies by an out-of-state insurer appeared to be inseparable from the extraterritorial activities necessary to processing and issuance of such policies.
The primary cases cited in AGO 73-162, Berry v. City of Dania, 24 Fla.Supp. 152 (15th Cir. Broward Co., 1963), aff'd, 168 So.2d 135
(Fla. 1964), and Isern v. City of West Miami, 244 So.2d 420
(Fla. 1971), were both based on the earlier case of Duffin v. Tucker, 153 So. 298 (Fla. 1933). These cases all predate the 1972 enactment of s. 205.042(3), F.S.
In Duffin v. Tucker, supra, the court concluded that the application of a municipal license tax to a salesman for a meat-packing company located in another city was an extraterritorial exercise of the city's taxing power. The court appears to have based this conclusion on the determination that the initial taking of orders and later delivery of goods within the taxing jurisdiction were inseparable from the processing of orders and shipment of goods in another jurisdiction. An analysis of the concurring opinions and opinion on rehearing reveals the court's reliance on Wagner v. City of Covington, 251 U.S. 95
(1919), and other U.S. Supreme Court "drummer cases" based on the Commerce Clause, s. 8, Art. I, U.S. Const. These "drummer cases" represent a view of the Commerce Clause that is, in my opinion, of questionable vitality in light of subsequent caselaw.
Federal jurisprudence has substantially expanded the authority for taxation of local activities impinging on interstate commerce. See, e.g., Department of Revenue of the State of Washington v. Association of Washington Stevedoring Companies, 435 U.S. 734
(1978). At the time of the Duffin case, the U.S. Supreme Court's view of state and local taxation and the Commerce Clause was that a transaction could not be divided into parts so as to subject the several parts to a multiplicity of state and local taxes. Now, however, the Court commonly upholds such state and local taxation where a reasonable nexus is shown between the taxed activities and the state or local jurisdiction, and where a tax is fairly apportioned and does not discriminate against interstate commerce. See, e.g., Department of Revenue of the State of Washington, supra; Complete Auto Transit, Inc. v. Brady, 430 U.S. 274 (1977) (state may under certain conditions tax interstate business directly).
Additionally, the Duffin court noted that there was no authority granted to the municipal authorities to levy the tax at issue in that case. The court's further dictum that "we seriously doubt that [levy of such tax] could be authorized by legislative enactment" must be read in light of the state of Commerce Clause jurisprudence in the early part of this century. In contrast, the Florida Legislature has specifically authorized the occupational license taxation of persons not maintaining a permanent business location in a municipality but who nevertheless transact business or engage in any occupation or profession in interstate commerce if not prohibited by the Commerce Clause. Section 205.042(3), F.S. See also, 1 Antieau, Local Government Law, Municipal Corporation Law s. 5.12 (Rev. ed. 1984) (legislature's express authorization of extraterritorial municipal taxing authority should be judicially sustained). Moreover, this office must presume the constitutional validity of s. 205.042(3). See, White v. Crandon,156 So. 303 (Fla. 1934).
Based on the foregoing analysis, I am unable to conclude that as a matter of law the occupational license taxation of an insurance company doing business within a municipality pursuant to s.205.042(3), F.S., is the extraterritorial exercise of the municipality's taxing power. Compare, Isern v. City of West Miami, supra, and Berry v. City of Dania, supra, neither of which involved authority granted under s. 205.042(3) to tax certain persons transacting business or engaging in occupations or professions in interstate commerce.
The factual determination of what local activities are separable from extraterritorial business activities for purposes of taxation still must be made in the first instance by local authorities. However, assuming such a determination is properly made, it appears that the plain language of s. 205.042(3), F.S., when read with provisions of federal law authorizing states to permit the regulation or taxation of the business of insurance, authorizes the type of municipal occupational license taxation in question. To the extent that AGO 73-162 is inconsistent, it is hereby modified.
SUMMARY
An insurance company which engages in interstate commerce and does business within a municipality without maintaining a permanent business location therein is subject to the municipality's occupational license tax pursuant to s. 205.042(3), F.S., where local business activities are separable from extraterritorial business activity.
Sincerely,
Robert A. Butterworth Attorney General